**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDSEY SIMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONTEFIORE HEALTH SYSTEM, INC.; MONTEFIORE MEDICAL CENTER.,<br><br>Defendant. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Lindsey Sims brings this Class and Collective Action Complaint against Defendants on behalf of herself and all others similarly situated. Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Montefiore is one of the largest hospital systems in New York.

2. Like many large hospital systems, Montefiore sources labor from staffing companies. Over the last decade, Montefiore has consistently worked with Fastaff, LLC ("Fastaff")—a staffing company focused on travel nursing—to supply healthcare clinicians who work fixed-term assignments, typically 13 weeks, at its hospital facilities across New York. These clinicians are typically travel nurses.

3. As part of the arrangement between the two companies, Fastaff serves as the acknowledged employer of the travel clinicians who work for Montefiore. In other words, Fastaff acknowledges an employment relationship with the travel clinicians. However, the economic realities of the relationship show that Montefiore also employs the travel clinicians. Employers like Montefiore cannot contract around their obligation to ensure their employees are paid correctly under state and federal remedial wage and hour statutes.

4. As an employer, Montefiore is jointly and severally liable for compensating these travel clinicians consistent with the Fair Labor Standards Act, the New York Labor Law, and the New York State Wage Theft Prevention Act. Here, it is liable for violations of all three.

5. To that end, travel clinicians who work for Montefiore through Fastaff are systematically underpaid overtime because significant portions of their pay is excluded from their "regular rate of pay." Specifically, the clinicians are paid "stipends" for housing and meals and incidentals, which are treated ostensibly as payments for expense reimbursement. However, the payments function as wages because, for example, the payments are tied to the quantity of work performed.

6. Through this action, Plaintiff seeks to hold Montefiore accountable for these widespread violations and recover the wages owed to these essential workers.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff is a citizen of Mississippi who worked for Defendants at Montefiore Medical Center within the State of New York. She was an hourly, non-exempt travel nurse who worked several fixed-term assignments for Defendants at Montefiore Medical Center, including from August 27, 2023 until November 18, 2023. Plaintiff's Consent to Join is attached as Exhibit 1.

8. Defendant Montefiore Health System, Inc. is a New York not-for-profit corporation with its principal place of business in Westchester County, New York, within the Southern District of New York.

9. Defendant Montefiore Medical Center is a New York not-for-profit corporation that is owned and operated by Defendant Montefiore Health System, Inc. with its principal place of business in the Bronx, New York, within the Southern District of New York.

10. This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendants and at least one class member are citizens of different states.

11. This Court also has subject matter jurisdiction over the Fair Labor Standards Act claims of Plaintiff and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendants because they are corporations organized under the laws of the State of New York and because they maintain their principal places of business in New York. In other words, Defendants are subject to general personal jurisdiction before the Southern District of New York.

13. Venue is proper in this district under 28 U.S.C. § 1391(b) because both Defendants reside within this district, and a substantial part of the events giving rise to the claims at issue occurred in this district, as one or more Plaintiff and putative class members performed work subject to this suit within the boundaries of this district.

## FACTS RELEVANT TO ALL CLAIMS

14. Under federal and New York law, an employee's "regular rate of pay" must include all remuneration for the employee's work when calculating overtime wages. As alleged herein, Montefiore excludes two principal forms of compensation from the regular rate of pay of its travel clinicians, a housing stipend (nominally to reimburse the nurse for duplicated housing expenses while traveling for work) and a meals and incidentals stipend (again, nominally to reimburse the nurse for meals and other incidentals incurred while traveling for work).

15. However, these payments function as wages because they are compensation for the clinicians' work and thus must be included in the regular rate of pay.

16. Every travel clinician who worked for Montefiore through Fastaff worked under nearly identical Assignment Agreement Letters ("AAL"). These AALs uniformly classify the clinicians as hourly, non-exempt workers. The AALs provide for a base hourly rate and a defined overtime hourly rate that is 1.5 times the base hourly rate.

17. These compensation packages are structured to include: (a) a comparatively low base hourly wage; and (b) payments labeled as housing stipends and meals and incidentals stipends. The base hourly wage is at a comparatively low level such that the overall compensation offered for an assignment approximates prevailing market rates only when the stipend payments are included. The AALs also purport to specify a fixed "overtime rate." However, under New York and federal law, an employee's overtime rate is derived from the regular rate of pay, which must be calculated on a workweek-by-workweek basis to include all remuneration for the employee's work.

18. The stipend payments, as structured and administered, operate as compensation for labor rather than *bona fide* expense reimbursements. The AALs expressly permit the amount of the stipends to be reduced or withheld when a travel clinician misses a scheduled shift or is unavailable to work. Despite this, the AALs default to paying the stipends on a weekly basis with a full day of stipends paid for every day of the week—*i.e.*, the AALs assume that the travel clinician is eligible to be paid a stipend for every day they are on assignment on the premise that they are away from home and incur living expenses every day throughout the duration of an assignment, regardless of whether work is performed on a particular day. By conditioning the

payment and retention of stipends on work availability and shift completion, the AALs confirm that these payments are tethered to work performed—not to expenses incurred.

19. In addition, the stipend payments are not tied to actual expenses incurred. Clinicians are not required to submit receipts, document expenditures, or reconcile stipend payments against substantiated costs. Instead, the stipends are offered and paid as predetermined amounts set unilaterally in the AALs, regardless of whether a nurse incurs corresponding expenses. This is in contrast to certain travel expenses for the assignment, for which documentation must be provided.

20. When Montefiore's travel nurse positions are advertised by the staffing company, the assignments are promoted using a single gross weekly pay or total compensation figure that aggregates hourly wages together with stipends payments. By presenting these amounts as part of the nurse's overall pay package—rather than as reimbursement tied to verified expenses—the staffing company reinforces that stipends function as compensation for work performed, not *bona fide* expense reimbursements.




21. Only when the applicant hovers over the "est. pay package" does the applicant even see the hourly rate associated with the position:




22. The most pertinent information is the total pay package and the total hours, the hourly rate treated as wages is secondary because the true *blended* hourly rate (*i.e.*, estimated pay package of $3,171 per week divided by 40 hours per week) is what matters.

23. Every AAL signed by a travel nurse to work a position at Montefiore through Fastaff contains the provision tethering the payment of stipends to availability for work and authorizing the deduction of a day of stipends if work is missed. This is confirmed by the staffing company handbook.[1]

24. Conversely, the staffing company does not deduct per diem payments when a hospital cancels a shift so long as the nurse remains available for work, further demonstrating that stipend payments turn on work availability rather than on whether expenses were incurred.

25. By conditioning the payment and retention of stipends and per diems on whether work is performed or available to be performed—and by reducing or clawing back those payments when work is not performed—the staffing company (working for Montefiore) confirms that these payments function as compensation for work. True expense reimbursements do not fluctuate based on hours worked, shifts completed, or employee availability to work—particularly where it is assumed that these travel clinicians are incurring expenses every day of the assignment.

[1] *See* Fastaff Employee Handbook at pp. 16-17 (confirming eligibility rules), available at: https://www.fastaff.com/asset/employee-handbook_fastaff

26. Further demonstrating that the stipends function as wages, the stipend payments are treated as a contractual entitlement, not as a legitimate expense reimbursement. For example, even if a nurse does not fill out paperwork evidencing that she is working away from home and eligible under IRS regulations for tax-free expense reimbursement payments, Fastaff will nonetheless pay the stipends but will treat them as taxable wages. The character of a payment does not change under the FLSA and New York law based on a piece of paper.[2]

27. Moreover, if a local nurse applies for a position as a travel nurse at a Montefiore hospital through Fastaff, that nurse will likely not receive tax-free stipends, but their wages will proportionally increase to account for that difference. This evidences that the payments function as wages.

28. The stipend payments function as wages for the clinicians' work that must be included in the regular rate when calculating overtime, not as legitimate expense reimbursement.

29. Despite these payments functioning as wages, they were never factored into Plaintiff's regular rate for purposes of overtime when she worked for Montefiore. For example, during the workweek of September 24 through September 30, 2023, Plaintiff worked 53.13 hours for Montefiore, including 13.13 hours of overtime. Plaintiff was paid a flat hourly rate of $64 per hour for 40 straight time hours. Plaintiff was paid $96 per hour for 13.13 overtime hours ($64/hr x 1.5 = $96/hr). However, during this workweek, Plaintiff was also paid $1,113 for housing stipend and $553 for her meals and incidentals stipend, which were not accounted for in her regular rate of pay. This process repeated itself week-after-week for Plaintiff and hundreds of other clinicians.

---

[2] *See* Fastaff Employee Handbook at pp. 18-20 (explaining that the stipends will only be treated as "non-taxable subsequent to successful completion of the Permanent Tax Residence form…" and that otherwise "the total housing stipend will be taxed" as wages, available at: https://www.fastaff.com/asset/employee-handbook_fastaff

## MONTEFIORE EMPLOYED
## PLAINTIFF AND SIMILARLY SITUATED TRAVEL CLINICIANS

30. As alleged above, each travel clinician who worked for Montefiore through Fastaff signed a form AAL that acknowledges an employment relationship between the clinician and the staffing company, Fastaff. However, Fastaff is operating at the direction and for the benefit of Montefiore and, as a result, these clinicians are jointly employed by Montefiore.

31. Control is the touchstone of the employment relationship, and Montefiore exerts considerable control over the clinicians who work for it through Fastaff, like Plaintiff. Here, these travel clinicians are doing the same work subject to the same policies and procedures as Montefiore's own acknowledged employees. The only difference is that Fastaff also acknowledges employing clinicians like Plaintiff who it places at Montefiore.

32. Montefiore has and exercises the power to hire or decline to hire any travel clinician who applies for a role with Montefiore through Fastaff.

33. Montefiore has and exercises the power fire any travel clinician who is working for it through Fastaff, for any reason.

34. Montefiore has and exercises the power to control the pay of any travel clinician who is working for it through Fastaff, for any reason. All pay to travel clinicians working at Montefiore through Fastaff is derivative of the amount paid to Fastaff for that work. Montefiore can and does change that pay at any time, which has a pass-through effect on the clinicians.

35. When travel clinicians work at Montefiore through Fastaff, the clinicians are subject to all of Montefiore's policies and procedures. This makes sense because the clinicians are caring for Montefiore's patients, so Montefiore exercises considerable control over the clinicians. Montefiore sets their schedule, can call them in, can cancel their shifts, and can send them home

early. Montefiore signs the clinicians' timecards. Likewise, the clinicians report directly to a supervisor at Montefiore who controls what work the clinician does and the circumstances under which the clinician performs it during the entirety of the clinician's shift at Montefiore. There is no legitimate difference at the hospital between the circumstances of the travel clinician and the staff clinicians who work at the facility and are employed by Montefiore.

36. Under both the FLSA and New York Law, there is an employment relationship between Montefiore and the travel clinicians who work for it through Fastaff, which makes Montefiore liable for the failure to correctly pay Plaintiff and similarly situated clinicians overtime as well as the derivative violations of the Wage Theft Prevention Act.

**ALLEGATIONS APPLICABLE TO THE FLSA**

37. At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

38. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

39. Montefiore is subject to the minimum wage and overtime pay requirements of the FLSA because they operate an enterprise engaged in interstate commerce and its employees are engaged in commerce.

40. During all relevant times to this action and for the reasons explained at length above, Montefiore acted as the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

41. During all times relevant to this action, Plaintiff and all similarly situated employees were Montefiore's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

42. Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a). Pursuant to the FLSA, the regular rate must include all remuneration for the employee's work when calculating overtime wages.

43. Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

44. Plaintiff and all similarly situated employees are victims of uniform and unlawful compensation policies.

45. Plaintiff and all similarly situated employees are entitled to damages equal to the unpaid overtime premium pay within the three years preceding the filing of the Complaint, plus periods of equitable tolling, because Montefiore acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by law.

46. Montefiore has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Montefiore acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

47. As a result of these violations, Montefiore is liable for liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**ALLEGATIONS APPLICABLE TO THE**
**NEW YORK STATE LAW CLAIMS**

48. At all times relevant, Plaintiff and all similarly situated employees have been entitled to the rights, protections, and benefits provided under the New York Labor Law and the New York Wage Theft Prevention Act.

49. During all times relevant to this action and for the reasons explained at length above, Montefiore was the "employer" of Plaintiff and the class members within the meaning of New York law, or otherwise subject to its statutory provisions. N.Y. Lab. Law § 190(3).

50. During all times relevant to this action, Plaintiff and the class members were Montefiore's "employees" within the meaning of New York law. N.Y. Lab. Law § 190(2).

51. Plaintiff and the class members are victims of uniform (and uniformly deficient) compensation and notice policies in violation of New York law.

52. Plaintiff and the Class are entitled to recover all damages, costs, attorney fees, statutory penalties, liquidated damages, and other recoverable items provided pursuant to the New York Labor Law and Wage Theft Prevention Act.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

53. Plaintiff brings Count I, the FLSA claim arising out of Montefiore's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and the following collective:

> All current and former clinicians (1) who worked at a Montefiore facility through Fastaff, LLC in New York; (2) who were paid a housing and/or meals and incidentals stipend; (3) who worked more than 40 hours in a workweek; and (4) whose regular rate of pay for overtime purposes did not include the value of the

> housing and/or meals and incidentals stipend at any time from three years prior to the filing of the Complaint to the present.

Plaintiff' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

54. Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Montefiore's above-described FLSA violations.

55. Plaintiff brings Counts II (Unpaid Overtime in Violation of the New York Labor Law), Count III (Failure to Provide Wage Statements in Violation of the New York Wage Theft Prevention Act), and Count IV (Failure to Provide Wage Notices in Violation of the New York Wage Theft Prevention Act) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4). Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to represent the following class:

> All current and former clinicians (1) who worked at a Montefiore facility through Fastaff, LLC in New York; (2) who were paid a housing and/or meals and incidentals stipend; (3) who worked more than 40 hours in a workweek; and (4) whose regular rate of pay for overtime purposes did not include the value of the housing and/or meals and incidentals stipend at any time from six years prior to the filing of the Complaint to the present.

Excluded from the Class are Montefiore, any entity in which Montefiore has a controlling interest, any of the officers or directors of Montefiore, the legal representatives, heirs, successors, and assigns of Montefiore, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or her immediate family.

56. Plaintiff's New York state law claims (Counts II-IV) described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

57. The class numbers in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

58. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Montefiore's actions include, without limitation, the following:

- Whether Montefiore had the power to hire clinicians working for it through Fastaff;
- Whether Montefiore had the power to fire clinicians working for it through Fastaff;
- Whether Montefiore had the power to control the schedules of the clinicians working for it through Fastaff;
- Whether Montefiore scheduled clinicians to work overtime and whether clinicians worked overtime;
- Whether Montefiore had the power to increase or decrease pay for the clinicians working for it through Fastaff;
- Whether Montefiore supervised the clinicians working for it through Fastaff;
- Whether clinicians working for Montefiore through Fastaff were paid stipends and the nature of those stipends;
- Whether the stipends were tethered to the quantity of work performed;
- Whether the value of the stipends was included in the regular rate when paying overtime;
- Whether Montefiore violated the New York Labor Law when it failed to ensure the stipend payments were included in the clinicians' regular rate of pay when they worked overtime;

- Whether Montefiore violated the Wage Theft Prevention Act when it failed to provide wage notice forms accurately listing all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;
- Whether Montefiore violated the Wage Theft Prevention Act when it failed to provide wage statements accurately listing all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay; and

59. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

60. Plaintiff's claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful pay practices as Plaintiff.

61. A class action is the superior method for the fair and efficient adjudication of Plaintiff' claims. Montefiore has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Montefiore, and/or substantially impair or impede the ability of class members to protect their interests.

62. Plaintiff is an adequate representative because she is a member of the class she seeks to represent, and her interests do not conflict with the interests of the members of the class. The interests of class members will be fairly and adequately protected by Plaintiff and her

undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

63. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members, particularly with respect to the issue of whether Montefiore is liable to them as an employer.

**COUNT I - FLSA (Unpaid Overtime Wages)**

63. Plaintiff re-alleges the allegations set forth above.

64. Montefiore violated the FLSA by failing to pay Plaintiff and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

65. The FLSA requires that employees are paid one and one-half times their regular rate of pay. By law, the regular rate includes all remuneration for employment. 29 U.S.C. 207(e).

66. Montefiore, as alleged herein, failed to include stipend payments that functioned as remuneration for work in the regular rate of Plaintiff and similarly situated employees. Overtime was thus underpaid to these workers, for which Montefiore is liable as an employer.

67. Montefiore has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid and/or untimely paid overtime pay pursuant to 29 U.S.C.

§ 216(b). Alternatively, should the Court find Montefiore did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiff and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, on Count I of the Complaint, Plaintiff and all similarly situated employees demand judgment against Montefiore and prays this Court:

a. Issue notice to all similarly situated workings under 29 U.S.C. § 216(b);

b. Award Plaintiff and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages for all unpaid overtime wages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT II – New York Labor Law (Unpaid Overtime Wages)

68. Plaintiff re-alleges the allegations set forth above.

69. Under the New York Labor Law, the concept of the regular rate of pay for overtime purposes is consistent with that of the FLSA described above.

70. New York Labor Law requires that employees are paid one and one-half times their regular rate of pay for hours over 40 in a workweek. The regular rate includes all remuneration for work.

80. Montefiore, as alleged herein, failed to include stipend payments that functioned as remuneration for work in the regular rate of Plaintiff and similarly situated employees. Overtime was thus underpaid to these workers, for which Montefiore is liable as an employer.

84. Montefiore has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the New York Labor Law, and as a result thereof, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to N.Y. Lab. Law § 198(1-a).

WHEREFORE, on Count II of this Complaint, Plaintiff and all similarly situated employees demand judgment against Montefiore and prays this Court:

a. Grant class certification pursuant to Fed. R. Civ. P. 23;

b. Award Plaintiff and the Class damages for the amount of unpaid wages due;

c. Award Plaintiff and the Class liquidated damages under N.Y. Lab. Law § 198(1-a);

d. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

e. Award Plaintiff and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-a); and

f. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT III – New York Wage Theft Prevention Act (Wage Statement Penalties)**

94. Plaintiff re-alleges the allegations set forth above.

95. New York's Wage Theft Prevention Act requires employers to furnish each employee with a statement with every payment of wages that includes, among other items, "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

96. Plaintiff and other similarly situated employees were not furnished accurate wage statements with their paychecks because, *inter alia*, the listed "overtime rate of pay" was incorrect and deficient as a matter of law in that the stipends were not included in the regular rate of pay and thus the overtime rate. Additionally, the listed "regular hourly rate" improperly excluded the stipend payments which Plaintiff and other similarly situated employees earned and functioned as wages. Because Defendants and the staffing company misrepresented Plaintiff's and similarly situated employee's regular rate and resulting overtime rate, Defendants and the staffing company further hindered these workers' ability to ensure they were paid correctly and, as the above facts demonstrate, they were not.

99. Montefiore did not make complete and timely payment of all wages due under New York law to Plaintiff and other similarly situated employees, as it failed to properly pay said employees all promised wages and for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-d).

100. Because Plaintiff and other similarly situated employees were not provided compliant and accurate wage statements attendant to having not been paid all wages due under the New York Labor Law by Montefiore, they are entitled to recover statutory penalties.

WHEREFORE, on Count III of this Complaint, Plaintiff and all similarly situated employees demand judgment against Montefiore and prays this Court:

a. Grant class certification pursuant to Fed. R. Civ. P. 23;

b. Award Plaintiff and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-d);

c. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

d. Award Plaintiff and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-d); and

e. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

**COUNT IV – New York Wage Theft Prevention Act (Wage Notice Penalties)**

101. Plaintiff re-alleges the allegations set forth above.

102. New York's Wage Theft Prevention Act requires employers provide each of their employees written notice of several wage-related items, including the employee's "regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1-a).

103. This notice must be provided "at the time of hiring", as well as seven days prior to any changes to the terms taking effect, "unless such changes are reflected on the wage statement furnished in accordance with subdivision three of [the law]", and the employer must retain the signed notice form for six years. *Id.*; *see also* N.Y. Lab. Law § 195(2).

105. For the reasons alleged in Count III, these changes were also not reflected in wage notices provided to Plaintiff and similarly situated employees.

106. Because of these deficiencies, Plaintiff and other similarly situated employees were unable to realize that they were being underpaid but were instead led to believe that they were paid all wages to which they were entitled, thereby depriving them of the opportunity to take any corrective action. Specifically, Defendants and the staffing company misrepresented Plaintiff's

and similarly situated employee's regular rate and resulting overtime rate, Defendants and the staffing company further hindered these workers' ability to ensure they were paid correctly and, as the above facts demonstrate, they were not.

107. Montefiore did not make complete and timely payment of all wages due under New York law to Plaintiff and other similarly situated employees, as it failed to properly pay said employees all promised wages and for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-b).

108. Because Plaintiff and other similarly situated employees were not provided accurate and timely written wage notices attendant to having not been paid all wages due under the New York Labor Law by Montefiore, they are entitled to recover statutory penalties.

WHEREFORE, on Count VI of this First Amended Class and Collective Action Complaint, Plaintiff and all similarly situated employees demand judgment against Montefiore and prays this Court:

f. Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

g. Award Plaintiff and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-b);

h. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

i. Award Plaintiff and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-b); and

j. Award Plaintiff and the Class such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all issues so triable.

Dated: May 8, 2026

Respectfully submitted,

/s/ *Matt Dunn*

**GETMAN, SWEENEY & DUNN PLLC**
Matt Dunn, Bar Roll No. 513505
260 Fair Street
Kingston, NY 12401
Telephone: (845) 255-9370
Facsimile: (845) 255-8649
mdunn@getmansweeney.com

**STUEVE SIEGEL HANSON LLP**
Alexander T. Ricke, *pro hac vice* forthcoming
Yasmin Zainulbhai, S.D.N.Y # YZ2351
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
ricke@stuevesiegel.com
zainulbhai@stuevesiegel.com

**ATTORNEYS FOR PLAINTIFF**